UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————X
                                                      :
JOE IBARZABAL, JENS CHRISTIAN SORENSEN,               :
BILLY F. ADAMS, JUDY ADAMS, MACK D.                   :
YOAKUM, L. VERMELL YOAKUM, PATSY D.                   :
DeVEAU, and the ESTATE OF CHARLES DeVEAU,             :
*on behalf of themselves and all others similarly situated,*  :    07 Civ. 2273 (SCR)
                                                      :
                      Plaintiffs,                     :    **DECISION AND ORDER**
                                                      :
              v.                                       :
                                                      :
MORGAN STANLEY DW, INC.,                              :
                                                      :
                      Defendant.                       :
————————————————————————X

**STEPHEN C. ROBINSON, District Judge**:

I.    **Background**

      A.    **Procedural history**

      Joe Ibarzabal ("Ibarzabal") and Jens Christian Sorensen ("Sorensen") filed this diversity

suit on March 16, 2007 on behalf of themselves and a defined class of claimants in arbitration

proceedings against Morgan Stanley DW, Inc. ("MSDW" or the "Defendant") before the

National Association of Securities Dealers ("NASD") or the New York Stock Exchange

("NYSE"). On May 14, 2007 an Amended Complaint was filed, naming six additional plaintiffs

(together with Ibarzabal and Sorensen the "Plaintiffs"). Plaintiffs allege three causes of action

under New York law arising out of their arbitration proceedings with Defendant: (i) deceptive

trade practices in violation of Gen. Bus. L. § 349; (ii) common law fraud; and (iii) breach of

contract. Defendant moved to dismiss the Amended Complaint on the ground that the suit

constitutes an impermissible collateral attack on arbitration awards in violation of the Federal



Arbitration Act (the "FAA"). For the reasons discussed below, Defendant's motion to dismiss is GRANTED.

## B.    Facts

Plaintiffs allege that they were lied to by Defendant concerning the existence of evidence relevant to their respective arbitration proceedings. Specifically, Plaintiffs state that from October 2001 through 2006, MSDW routinely failed to provide relevant e-mail communications from prior to October 2001 to arbitration claimants. MSDW maintained that such e-mail had been destroyed in the collapse of the World Trade Center on September 11, 2001. Plaintiffs claim that MSDW did in fact have possession of these pre-October 2001 e-mails on backup tapes, as well as on individual user computers that were not destroyed on September 11. They contend that MSDW substantially rebuilt its e-mail system by September 17, 2001 by using these backup tapes, essentially restoring the system to where it had been at the close of business on August 30, 2001. According to the Amended Complaint, Defendant, in addition to failing to produce these documents, later destroyed many of the subject e-mails that were recovered from the backup tapes by overwriting those tapes, and allowed restored e-mails to be deleted by individual users over an extended period of time. Among other alleged consequences, documents subject to discovery requests in arbitration proceedings were not provided, and the proceedings, including arbitrations involving each of the named Plaintiffs here, were concluded without consideration of this evidence. In April 2005, MSDW sent letters to its arbitration adversaries, indicating that it had "recently come to appreciate that there are additional sources that might contain additional responsive e-mail," and that MSDW was attempting to "determine if there is e-mail or other electronic data…that is responsive to discovery obligations." See, e.g., Cooney Decl. Ex. A; Reilly Decl. Ex. A.

## II.    Analysis

### A.    Standard of review

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court "must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). At this stage, "the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998) (internal quotations omitted). When considering a motion to dismiss for failure to state a claim, a district court may consider the facts as set forth in the complaint, documents attached to the complaint, and any other documents incorporated in the complaint by reference. Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991).

### B.    Federal Arbitration Act

The FAA was enacted to "reverse the longstanding judicial hostility to arbitration agreements" and "to place arbitration agreements on the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991). The Supreme Court has made clear, however, that "it is the language of the contract that defines the scope of disputes subject to arbitration" – the statute does not authorize courts to compel arbitration of any issues, but rather "ensures the enforceability of private agreements to arbitrate." EEOC v. Waffle House, Inc., 534 U.S. 279, 289 (2002).

The FAA provides the remedy for parties seeking to challenge an arbitration award governed by that statute,[1] allowing a federal district court to entertain a motion to vacate an

---

[1] The FAA is applicable to arbitration awards involving disputes concerning interstate commerce. See 9 U.S.C. § 2. It is clear that the FAA applies to the types of securities transactions that were the subject of Plaintiffs' underlying arbitration proceedings.

3

arbitration award "upon the application of any party of the arbitration where the award was procured by corruption, fraud, or undue means." See 9 U.S.C. § 10(a)(1). Various courts have described the FAA provision as the "exclusive remedy for challenging acts that taint an arbitration award." See, e.g., Decker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 205 F.3d 906, 909 (6th Cir. 2000) (dismissing complaint containing state common law claims that were based on plaintiff's allegation that defendant improperly influenced the arbitration panel); see also Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d. 1085, 10 (2d Cir. 1993) (FAA provisions are "normally the exclusive remedy"); Corey v. New York Stock Exch., 691 F.2d 1205, 1211-12 (6th Cir. 1982).

In December 2005, Judge Patricia A. Seitz of the Southern District of Florida dismissed a class action complaint containing allegations very similar to those presented here. See Quintana, et al. v. Morgan Stanley DW, Inc., No. 05-21401-CIV (PAS), Order Granting Defendant's Motion to Dismiss and Closing Case (hereinafter the "Quintana Order"). The Quintana plaintiffs lost an NASD arbitration proceeding against MSDW in 2004; in April 2005, MSDW sent the Quintana family a letter indicating that it had recently discovered sources of e-mail that could potentially contain documents responsive to requests made during their arbitration. See Quintana Order at 2. The Quintana family filed a class action suit against MSDW alleging breach of contract, negligence, and breach of fiduciary duty, claiming, as Plaintiffs claim here, that MSDW's failure to produce discovery materials resulted in unfair arbitration awards. Judge Seitz dismissed the class action complaint, finding that "Plaintiffs' exclusive remedy for Defendant's alleged misconduct in the arbitration proceedings is to seek a *vacatur* of any arbitration award under section 10 of the FAA." Quintana Order at 1. Judge Seitz also held that

the Quintana plaintiffs' claims for damages could not be viewed as independent of their attack on their individual arbitration proceedings.

The Second Circuit did carve out a limited exception to the "exclusive remedy" of the FAA by reversing a district court dismissal of a complaint where the plaintiff alleged that defendant had discriminated against him on the basis of race during his arbitration proceeding. See Mian, 7 F.3d. 1085, 1086. Though the Second Circuit held that 9 U.S.C. §§ 10 and 12 are "normally the exclusive remedy to challenge the results of an arbitration proceeding," plaintiff's "failure to move to vacate the arbitration award within the time prescribed by 9 U.S.C. § 12 does not prevent him from seeking to recover damages for alleged civil rights violations that occurred during the arbitration proceeding itself." Id. at 1086-87. This was true even though "a major component of the damages sought would consist of the amount of the arbitration award." Id. at 1087. The Mian court viewed the civil rights violation as a separate action from the challenge to the arbitration.

Defendant contends that Plaintiffs' Amended Complaint is merely an attempt to collaterally attack Plaintiffs' arbitration awards, and argues that such attack is impermissible in the form contemplated by the Amended Complaint based on the provisions of the FAA. In contrast, Plaintiffs' maintain that they do not seek damages predicated upon a deficiency in their individual arbitration awards, but rather seek statutory and other damages "to compensate for Defendant's violations of law." Alternatively, Plaintiffs argue that this action must be allowed to proceed because these class claims could not have been brought in an arbitration proceeding.

The injuries alleged by Plaintiffs are predicated on the impact of MSDW's alleged conduct on the outcomes of their arbitration proceedings; accordingly, this Court must view the instant action as an attempt by those Plaintiffs who actually received final arbitration awards to

5

collaterally attack those awards. See Decker, 205 F.3d at 910 ("where a party files a complaint in federal court seeking damages for an alleged wrongdoing that compromised an arbitration award and caused the party injury, it 'is no more, in substance, than an impermissible collateral attack on the award itself'") (quoting Corey, 691 F.2d at 1211-12). As discussed above, § 10(a)(1) of the FAA makes clear that the only proper method for challenging an arbitration award is via a motion to vacate, not a separate class action lawsuit filed after all arbitration proceedings have been completed. To allow this method of attack on arbitration awards would eviscerate the efficiency and finality that are the very purposes of many arbitration agreements.

Though Mian does allow for the possibility that there may be other means of challenging arbitration decisions, that holding has never been applied beyond the contexts of federal civil rights statutes such as 42 U.S.C. § 1981. It is important to recognize that the Mian court did acknowledge that the FAA procedures "are normally the exclusive remedy to challenge the results of an arbitration proceeding"; this Court does not read Mian to stand for the proposition that *any* alleged statutory violation committed during an arbitration proceeding may give rise to a separate lawsuit to challenge the arbitration outcome. The facts of this case do not touch upon the same types of statutorily protected interests that led the Mian court to make its limited exception to the FAA.

Plaintiffs point to NASD Rule 10301(d), which indicates that class action claims are not eligible for arbitration before the NASD, and that NASD members (such as MSDW) shall not seek to enforce arbitration agreements with individuals who are part of a class action proceeding. The NYSE rules and regulations contain a similar provision.[2]  In addition, language in the standard MSDW customer agreement makes clear that class action suits are not permitted in arbitration. Because of these provisions, Plaintiffs maintain, this class action claim could not

_____

[2] See NYSE Arbitration Rule 600(d).

6

have been submitted as an arbitration proceeding, and should therefore be allowed to continue in this forum.

While this may be an accurate interpretation of the NASD and NYSE rules and the MSDW customer agreement, it is of little relevance here; the regulatory provisions are designed to provide protection to class action participants who decide to pursue legal remedies via a class action, rather than via arbitration. See Coheleach v. Bear, Stearns & Co., Inc., 440 F. Supp. 2d 338, 341 (S.D.N.Y. 2006). Here, Defendant is not arguing that these claims should be dismissed because they must be arbitrated; indeed, the issue here is that Plaintiffs each *already arbitrated* their claims – they did not attempt to file a class action suit as a substitute for the arbitration proceedings required by their customer agreements. This analysis would be different if Plaintiffs had opted to file a class action suit instead of proceeding with their individual arbitrations – under that factual scenario, the NASD and NYSE rules would have protected Plaintiffs against an effort by Defendant to force the class to arbitration. There is nothing in NASD Rule 10301(d) or NYSE Arbitration Rule 600(d), however, to suggest that a class action suit may provide an alternate avenue for challenging arbitration awards; those rules, therefore, provide no protection for Plaintiffs in this case.

Similarly, Plaintiffs argue that the fact that this case was filed as a class action distinguishes it from those cases, brought by individuals, where courts ruled that the FAA was the exclusive method for challenging an arbitration award. See Pl. Mem. of Law at 11-12. Indeed, in their opposition to the instant motion, Plaintiffs appear to concede that a claim such as this would be barred by the FAA if it were brought by an individual plaintiff rather than by a class of plaintiffs. Id. at 16 n.10. It is well settled, however, that the fact that Plaintiffs filed this suit as a class action does not afford them any additional substantive rights. See 28 U.S.C. §

7

2072(b); Amchem Products, Inc. v. Windsor, 521 U.S. 591, 612-13 (1997). The number of plaintiffs does not alter the applicability of the statutory scheme, nor does it disturb any of the above-cited precedents.

### C.    Plaintiffs who did not receive an arbitration "award"

At oral argument, there was discussion about whether the statutory language of the FAA describing the limited methods for challenging an arbitration "award" applies to those arbitration proceedings that were resolved by a negotiated settlement rather than by an "award" from an arbitrator. The eight named Plaintiffs were involved in a total of five arbitration proceedings – three pairs of Plaintiffs are suing based on the same arbitration. Of those five proceedings, three were resolved via settlement: Sorensen's proceeding; the proceeding on behalf of Mack D. Yoakum and L. Vermell Yoakum (the "Yoakums"); and the proceeding on behalf of the Estate of Charles DeVeau, which also involved Patsy D. DeVeau (the "DeVeaus"; Sorensen, the Yoakums, and the DeVeaus are hereinafter referred to as the "settling Plaintiffs").

We need not determine at this time whether the "award" language contained in § 10 of the FAA applies to the settling Plaintiffs, because the settling Plaintiffs all signed releases relinquishing any and all future claims. See Reilly Decl. Exs. B, C; Briody Decl. Ex. A. A signatory to a release of claims – even when the release is broad and covers a wide range of potential actions – may be precluded from bringing suit on any claims covered by such release. See Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, Nat'l Ass'n, 731 F.2d 112, 125 (2d Cir. 1984). Various courts in this district have made clear that "a valid release provision may warrant dismissal, pursuant to Rule 12(b)(6), of claims encompassed by the release." RBS Holdings, Inc. v. Wells Fargo Century, Inc., 485 F. Supp. 2d 472, 479 (S.D.N.Y. 2007) (citing Ladenburg Thalmann & Co. v. Imaging Diagnostic Systems, Inc., 176 F. Supp. 2d 199, 204 (S.D.N.Y.

8

2001)); see also Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 463 (2d Cir. 1998). If, however, a party was fraudulently induced to execute the release in question, the release may be voided. See Ladenburg, 176 F. Supp. 2d at 204.

While the language used in these releases is broad, there is no question that it covers the causes of action in this suit. Plaintiffs have given no indication that these settlement agreements have been repudiated in any way, or that any of the settling Plaintiffs have taken steps to attempt to undo or otherwise void their settlement agreements. Further, the allegations contained in the Amended Complaint are wholly insufficient to support the theory that the settlement releases were obtained as a result of fraudulent inducement by Defendant. With respect to the DeVeau settlement, for example, it is clear that the agreement containing the release provision was signed more than seven months after the DeVeaus were informed by letter that Defendant might in fact be in possession of additional e-mails relevant to their arbitration. See Reilly Decl. Exs. A, B. Similarly, the Yoakum settlement (signed in November 2005) and the Sorensen settlement (signed in April 2006) were executed well after Defendant began communicating with its arbitration adversaries about the discovery of such potentially responsive materials in April 2005. See Reilly Decl. Ex. C; Briody Decl. Ex. A.

Accordingly, to the extent that the claims made by any of the settling Plaintiffs are not barred by § 10 of the FAA, those claims are dismissed as a result of the valid releases signed by the settling Plaintiffs.

### D.    Request for leave to amend complaint

At the conclusion of their papers in opposition to Defendant's motion to dismiss, Plaintiffs request leave to file a second amended complaint within 60 days in the event that any portion of the amended complaint is dismissed. While the Second Circuit "strongly favors

liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)," it has affirmed district court decisions to deny leave to replead where, as here, "plaintiff's counsel did not advise the district court how the complaint's defects would be cured." See Porat v. Lincoln Towers Cmty. Ass'n, 464 F.3d 274, 276 (2d Cir. 2006). Plaintiffs, who have already amended their complaint once, have provided absolutely no indication of how they would cure the significant defects discussed above. The only specific item mentioned in the request for leave to replead is the addition of another putative class representative in the event that this Court concluded that the Plaintiffs lacked standing based on mootness. That was not this Court's conclusion here. Accordingly, this Court does not believe it is appropriate to allow Plaintiff another chance to cure the Amended Complaint at this stage; it is highly likely that any such effort would be futile. Accordingly, Plaintiffs; request for leave to further amend the complaint is DENIED.

## III.    Conclusion

For the reasons discussed above, Defendant's motion to dismiss is GRANTED, and Plaintiffs' request for leave to further amend their complaint is DENIED. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: _December 3_ , 2007
    White Plains, New York

Stephen C. Robinson
United States District Judge